E-FILED
Wednesday, 24 September, 2014  11:40:24 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-cv-1223 |
| ) | |
| MOONEY'S PUB INC., D/B/A ) | |
| MOONEY'S PUB AND MICHELLE ) | |
| BRUCE INDIVIDUALLY AND AS AN ) | |
| OFFICER, DIRECTOR, SHAREHOLDER) | |
| AND/OR PRINCIPAL OF MOONEY'S ) | |
| PUB INC., D/B/A MOONEY'S PUB, ) | |
| ) | |
| Defendant. ) | |

## O R D E R  &  O P I N I O N

This matter is before the Court on Defendants' Motion to Dismiss and Strike Complaint. (Doc. 4). For the reasons stated below, the Motion is denied.

### PROCEDURAL HISTORY

Plaintiff filed its Complaint on June 9, 2014, alleging that Defendants violated 47 U.S.C. §§ 553 and 605 ("the Cable Act") by exhibiting an Ultimate Fighting Championship match on April 21, 2012. Defendants filed a Motion to Dismiss and Strike Complaint on July 11, 2014. (Doc. 4). In their Motion, Defendants argue that Plaintiff has failed to state a claim against individual Defendant Michelle Bruce pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants also raise two affirmative defenses. (Doc. 7).

## LEGAL STANDARDS

In ruling on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient detail to give notice of the claim, and the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard requires enough facts "to present a story that holds together," but does not require a determination of probability. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Though detailed factual allegations are not needed, a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555.

Ordinarily it is premature for courts to consider unpleaded affirmative defenses at the motion to dismiss stage, because "complaints do not have to anticipate affirmative defenses to survive a motion to dismiss." *United States v. Lewis*, 411 F.3d 838, 842 (2005)(citation omitted). However, there is an exception when a complaint's allegations "set forth everything necessary to satisfy the affirmative defense." *Id.* In such circumstances, the Seventh Circuit characterizes these motions as Rule 12(c) motions for judgment on the pleadings, in spite of the

fact that they are filed before the pleadings are closed. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *United States v. Wood*, 925 F.2d 1580, 1581 (7th Cir. 1991); *see also Brooks v. Ross*, 578 F.3d 574, 579 (2009) (noting that the practical effect of addressing a statute of limitations defense in a Rule 12(c) motion is the same as addressing it in a Rule 12(b)(6) motion). Thus, all well-pleaded facts in the operative complaint are taken as true and all reasonable inferences drawn in the plaintiff's favor. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004).

## FACTUAL BACKGROUND[1]

Plaintiff, Joe Hand Promotions, Inc. ("Joe Hand"), is a Pennsylvania corporation that owns the distribution rights to the UFC 145: Jones v. Evans broadcast and all of its undercard bouts, which was scheduled for April 21, 2012. The broadcast originated via satellite uplink, and was retransmitted to both closed-circuit cable systems and satellite companies.

Joe Hand limited public exhibition of the broadcast by entering into contracts with various entities in Illinois that granted them the right to exhibit it. Defendant Mooney's Pub is a Peoria, Illinois entity that did not have authorization to exhibit the broadcast, but it did so anyway on April 21, 2012. Defendant Michelle Bruce

---

[1] The Court draws the facts in this section from Plaintiff's Complaint (Doc. 1), treating its allegations as true and drawing all reasonable inference in its favor, in accordance with the motion to dismiss standard described above.

3

had supervisory capacity and control over the activities occurring within Mooney's on that day, and she received financial benefit from Mooney's operations.

Joe Hand alleges two alternative causes of action because it is unsure of the manner in which Defendants obtained the broadcast at this point. If Defendants intercepted the signal via a cable system, Joe Hand alleges they violated 47 U.S.C. § 553. But if Defendants intercepted the signal via satellite transmission, Joe Hand alleges they violated 47 U.S.C. § 605.

Defendants raise three separate arguments in their Motion to Dismiss and Strike the Complaint. First, they argue that Plaintiff has failed to state a claim against Michelle Bruce because the allegations that she is "an Officer, Director, Shareholder, and/or Principal" and that she had "supervisory capacity and control over the activities occurring within the Establishment on April 21, 2012" are insufficient to establish liability under §§ 553 and 605. Second, they argue that Plaintiff does not have capacity to sue in this Court because it is not registered to do business in the State of Illinois. Third, they argue that the action is barred by the statute of limitations. For reasons addressed below, these arguments are unpersuasive and Defendants' Motion to Dismiss and Strike the Complaint is denied.

***Plaintiff's Complaint against Michelle Bruce***

Defendants seek to dismiss Plaintiff's Complaint against Michelle Bruce, putting forth the abbreviated argument that the allegations that she is "an Officer, Director, Shareholder, and/or Principal" and that she was the individual "with

4

supervisory capacity and control over the activities occurring within the Establishment on April 21, 2013" are insufficient to establish individual liability. Plaintiff responds by arguing that its complaint contains sufficient facts to prove liability because it also pleaded that Bruce had a financial interest in Mooney's on the evening in question.

To hold individuals vicariously liable for violations of §§ 553 and 605, a plaintiff must show that the individual had "a right and ability to supervise the violations, and that she had a strong financial interest in such activities." *J&J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008).[2] In *Ribeiro*, the district court denied a motion to dismiss the individual defendant when the plaintiff's pleading was identical to Joe Hand's pleading in this case.

Courts have dismissed complaints against individual defendants when plaintiffs have failed to make allegations that the individuals were present during the unauthorized broadcast, that they authorized or controlled it, or that they reaped financial benefits from it. *See J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009); *J&J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 591-592 (D. Md. 2012) (dismissing individual defendants when "the only specific factual allegations" linking them to complaint

---

[2] Some district courts have suggested that vicarious liability might be unavailable under the statute. *See, e.g., J&J Sports Prods., Inc. v. Resendiz*, No. 08 C 4121, 2009 WL 1953154, at *2, n.1 (N.D. Ill. July 2, 2009) ("[W]e are skeptical that the doctrine of vicarious liability should be extended to broadcast piracy actions."). However, Defendants do not seem to challenge the validity of vicarious liability. The theory of vicarious liability under the Cable Act finds its roots in the copyright context. *See Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 971-72 (2d Cir. 1997). Rather than challenging the application of vicarious liability in this context, Defendants seem to have embraced it by arguing that Plaintiff did not plead the elements that *Softel* requires. (Doc. 4 at 1).

5

was "that both are named on [the defendant's] liquor license" and one is the defendant's resident agent).

In this case, Plaintiff did not simply plead that Michelle Bruce is "an officer, director, shareholder and/or principal of Mooney's Pub, Inc." Instead, Plaintiff has put Defendants on notice that its theory of Michelle Bruce's liability rests on the factual predicates that she had supervisory capacity and control over the bar and also stood to financially benefit from its operations. Although these allegations might appear to formulaically track the required elements for legal liability, they "present a story that holds together" if one draws all inferences in favor of Plaintiff. *See Swanson*, 614 F.3d at 404. At this stage, it is reasonable to infer that Michelle Bruce had a financial interest in Mooney's Pub based on her alleged ownership interest in the venture. When coupled with the allegation that she exercised supervision or control over the premises at that time, Joe Hand's allegations are sufficient to state a claim for vicarious liability. Defendants' motion to dismiss the complaint against Michelle Bruce for failure to state a claim is denied.

***Plaintiff's Capacity to Sue***

The second argument that Defendants raise is that Plaintiff does not have capacity to sue in Illinois Court. The Illinois Business Corporation Act of 1983 includes a door closing provision that prohibits foreign corporations that transact business in Illinois without a Certificate of Authority from maintaining "a civil action in any Court of this State" until they have obtained the certificate. 805 Ill. Comp. Stat. 5/13.70. Defendants argue that because Joe Hand is not registered to do business in the state, the statute bars it from filing a law suit. Joe Hand

6

concedes that it lacks a Certificate of Authority, but argues the bar does not apply because (1) Defendants have not met their burden of proving that it transacts business in the state, (2) it does not transact business in the state as defined by the statute, and (3) even if it did transact business, its business concerns interstate commerce, which is exempt from the statute.

The Court does not need to address these arguments on the merits to decide the issue. The statute is simply inapplicable in this case, where the Court has federal question jurisdiction. If the Court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, there would be a real possibility that the statute would apply and the Court would need to address the merits. When a federal court sits in diversity, it applies substantive state law and federal procedural law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). For example, in *Woods v. Interstate Realty Co.*, the Supreme Court held that state door-closing statutes that bar recovery in state court, like Illinois' statute, must similarly bar recovery in federal court when the plaintiff invokes diversity jurisdiction. 337 U.S. 535, 538 (1949).

Although the Supreme Court has not overruled *Woods*, its holding is called into question by *Hanna v. Plumer*, 380 U.S. 460 (1965). Under *Hanna*, "if a duly promulgated federal rule of procedure conflicts with state law, the Rules Enabling Act, 28 U.S.C. § 2072, commands a federal court to apply [the federal] rule of procedure unless to do so would abridge a substantive right under state law." *Lux v. McDonnell Douglas Corp. (In re Air Crash Disaster)*, 803 F.2d 304, 313-14 (7th Cir. 1986). In this case, Federal Rule of Civil Procedure 17(b)(2) provides that a

7

corporation's capacity to sue is "determined . . . by the law under which it was organized." That said, federal courts sitting in diversity in Illinois have generally not questioned the applicability of the statute. *See, e.g., Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345-46 (1991) (holding that defendant waived its capacity argument by failing to raise it at the earliest opportunity); *RehabCare Group East, Inc. v. Camelot Terrace, Inc.*, No. 10 CV 02350, 2010 WL 5174369, at *5 (N.D. Ill. Dec. 15, 2010) (holding that the Illinois statute applies rather than Rule 17(b), and dismissing corporation's complaint).

The Court need not get entangled in that question. Joe Hand's complaint alleges two causes of action that are based in federal law, and invokes jurisdiction pursuant to 28 U.S.C. § 1331. In such a case, there is no need for the Court to apply state law. Instead, the Court turns to the Federal Rules of Civil Procedure. Joe Hand is a Pennsylvania corporation, so its capacity to sue is determined by Pennsylvania corporate law. *See* Fed. R. Civ. P. 17(b)(2). Therefore, Defendants' motion is denied on this ground.

### *The Cable Act's Statute of Limitations*

The final argument Defendants make is that the Complaint is barred by the Cable Act's statute of limitations. This is an affirmative defense, so the Court will treat it as a motion for judgment on the pleadings under Rule 12(c). *See Brownmark Films, LLC*, 682 F.3d at 690.

As both parties acknowledge, the Cable Act is silent on the statute of limitations that attach to private rights of action brought under it. Ordinarily, a federal court could adopt the catch-all statute of limitations of four years codified in

8

28 U.S.C. § 1658(a), which is available for all causes of action "made possible by a post-1990 [statutory enactment]." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Here, the parties agree that § 1658(a) does not apply because the relevant substantive statutory provisions were passed before 1990. *See Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958, 960 n.2 (N.D. Ill. 2000). In such a case, the Court must determine the statute of limitations through analogy to other statutes.

Defendants argue that the Court should apply the two-year statute of limitations found in the Federal Electronic Communications Privacy Act (FECPA). If it did, Plaintiff's action would be untimely, as the statute would have run in April of 2014 and Plaintiff did not file its complaint until June 9, 2014. Plaintiff argues against applying the statute of limitations in the FECPA, and instead suggests that the Court apply the three-year statute of limitations found in the Copyright Act, 17 U.S.C. § 507(b). As a fallback, Plaintiff urges the Court to apply the statute of limitations in the Illinois Cable Piracy Act (ICPA). For the reasons explained below, the Court will apply the statute of limitations for the ICPA, which it determines is five years. Therefore, the Court denies Defendants' motion on this issue.

*Federal Common Law*

When, as here, "Congress fails to provide a statute of limitations for a federal claim and § 1658(a) is not applicable, federal courts must borrow the most analogous statute of limitations from state law." *Berger v. AXA Network LLC,* 459 F.3d 804, 808 (7th Cir. 2006). Although courts are not required to choose a state statute of limitations period, they follow this judicially-created rule as a matter of

9

federal common law and choose state limitations periods to fill in "the interstices of federal enactments." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 159 (1983).

In this situation, state law is a "lender of first resort." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995). Courts will apply analogous federal statutes rather than state statutes only in rare circumstances, when "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989). The Supreme Court, for example, adopted the Clayton Act's statute of limitations for federal civil RICO. RICO actions present a unique need for interstate uniformity because plaintiffs must prove both a nexus to interstate or foreign commerce and a pattern of racketeering that often involves activity in multiple geographic areas. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 153-54 (1987).

*Need for Uniformity*

Circuits have split over the question of whether the federal policies underlying the Cable Act require a nationally uniform statute of limitations, and the Seventh Circuit has not addressed the question. In *Prostar v. Massachi*, the Fifth Circuit applied the statute of limitations in the Copyright Act. 239 F.3d 669 (5th Cir. 2001). It reasoned that the cable industry needed a national standard because it is a national industry and actions brought under the Cable Act are often of a multi-state nature. *Id.* at 676. Both the Third and Ninth Circuit reached opposite conclusions, and employed the same reasoning as each other. First, a

10

uniformity concern does not implicate a need for a uniform statute of limitations, but instead concerns the way in which a court should characterize a federal cause of action before borrowing statutes of limitations from state law. *See DirecTV v. Webb*, 545 F.3d 837, 851 (9th Cir. 2008); *Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.*, 366 F.3d 217, 224 (3d Cir. 2004). Second, the interstate identity of litigants in Cable Act cases does not change the fact that claims brought under the Cable Act are based upon localized violations in a single place rather than multiple acts occurring in disparate jurisdictions. *DirecTV*, 545 F.3d at 851; *Kingvision*, 366 F.3d at 224. The Cable Act, therefore, raises different interstate concerns than RICO civil actions. *See Kingvision*, 366 F.3d at 223.

The Court finds the reasoning of the Third and Ninth Circuits more persuasive than the reasoning of the Fifth Circuit. Although the Fifth Circuit's concern with national uniformity is relevant, the existence of fractured statutes of limitations is just a consequence of the well-entrenched rule that federal courts will borrow statutes of limitations from analogous state statutes. Therefore, there is no reason to resort to federal law for an applicable statute of limitations unless there is no appropriate state law analogue.

*Analogous Federal and State Statutes*

The trend in federal courts has been to apply the Copyright Act's statute of limitations when the closest analogue is the state tort of conversion. *See, e.g., Kingvision Pay Per View, Ltd. v. Boom Town Saloon, Inc.*, 98 F. Supp. 2d 958 (N.D. Ill. 2000). In *Kingvision*, the court concluded that the Copyright Act served as a "closer fit" to the Cable Act than Illinois' conversion cause of action because "the

11

same conduct can violate both laws" and "the remedial structure" of the Copyright Act – which goes beyond ordinary tort remedies and includes criminal sanctions, injunctive relief, actual damages, statutory damages, and attorney's fees –"closely parallels those set forth under the Cable Act." *Id.* at 964. *See also Prostar*, 239 F.3d 669 (5th Cir. 2001)(selecting Copyright Act's statute of limitations rather than Louisiana's statute of limitations on conversion claims).

However, when state law provides a private right of action for cable piracy, the trend is for courts to apply the statute of limitations from state law.[3] The Third Circuit concluded that the Pennsylvania state piracy statute "mirror[s] . . . the [Cable Act]." *Kingvision*, 366 F.3d at 224. It analyzed the remedial structures and scope of each statute in order to conclude that it "is the closer fit the Supreme Court contemplated as the appropriate source from which to borrow a statute of limitations." *Id.* at 225 (quotations omitted). *See also DirecTV*, 545 F.3d at 848-49.

*The Illinois Cable Piracy Act's Coverage and Remedies*

Like the Pennsylvania Cable Piracy Act, the Illinois Cable Piracy Act parallels the federal Cable Act. First, the ICPA covers the same subject matter as the Cable Act. Under the ICPA, "[a] person commits theft of communication services when he or she knowingly . . . obtains or uses a communication service without the authorization of, or compensation paid, to the communication service provider." 720 Ill. Comp. Stat. 5/16-18(b). Communications services include

---

[3] When a court in the Northern District of Illinois concluded that the Copyright Act's statute of limitations applied to the Cable Act, it did not have the benefit of considering the Illinois Cable Piracy Act, which was passed three years later, in 2003. *See Kingvision*, 98 F. Supp. 2d at 964; 720 Ill. Comp. Stat. 5/16-19 (repealed 2012).

12

transmitions, signals, and services that are "lawfully provided by any . . . cable television [or] satellite . . . network, system, facility, or technology." 720 Ill. Comp. Stat. 5/16-0.1. Therefore, it covers similar ground to 47 U.S.C. § 553(a), which prohibits a person from intercepting or receiving "any communications service offered over a cable system," and 47 U.S.C. § 605(a), which prohibits a person from "receiving [or] assisting in receiving" unauthorized satellite signals.

The ICPA also has a similar remedial scheme to 47 U.S.C. §§ 553 and 605, in that it provides for criminal penalties, injunctive relief, actual damages, statutory damages, punitive damages, and attorney's fees. Under the ICPA, a violator may be charged with a misdemeanor, and in some cases a felony. 720 Ill. Comp. Stat. 5/16-18(c)(2). Additionally, "any person aggrieved" may bring a civil action and obtain injunctive relief or damages. *Id.* at 5/16-18(h). Plaintiffs may elect to recover either actual damages or statutory damages that range from $250 to $10,000 "for each unlawful communication or access device involved." *Id.* at 5/16-18(h)(3). Statutory damages are determined by the court, as it considers just. *Id.* Finally, courts may award punitive damages and attorney's fees. *Id.* at 5/16-18(h)(2)(D),(E). Meanwhile, § 553 imposes criminal penalties that range from six months to five years and carry fines of up to $100,000. 47 U.S.C. § 553(b)(1)-(3). Injunctive relief, actual damages, and statutory damages are available in civil actions. *Id.* at § 553(c). The court may award attorney's fees to a prevailing aggrieved party, *id.* at § 553(c)(2)(C), and it may "increase the award of damages . . . by an amount of not more than $50,000" when it finds "that the violation was committed willfully and for purposes of commercial advantage or private financial gain." *Id.* at § 553(c)(3)(B). Finally, § 605

imposes criminal penalties, 47 U.S.C. § 605(e)(1), (2). It also has a provision for a private right of action that provides for injunctive relief, actual damages, statutory damages, and punitive damages. *Id.* § 605(e)(3). Unlike the other two provisions, it instructs that courts must provide prevailing aggrieved parties with attorney's fees. *Id.* § 605(e)(3)(B)(iii).

Based upon these similarities in coverage and remedies, the Court holds that the ICPA is the most analogous law to the Cable Act.

*The Illinois Cable Piracy Act's Statute of Limitations*

Like the Cable Act, the ICPA is also silent as to its statute of limitations, and there is a paucity of Illinois' case law on the subject. For that reason, Plaintiff urges the court to simply stick with the Copyright Act's statute of limitations and avoid making the unwieldy determination of the ICPA's actual limitation period. The Court declines this invitation, as it must seek to apply the statute of limitations from an analogous state statute before it looks to federal law. *See Berger*, 459 F.3d at 808.[4] It therefore must determine the ICPA's statute of limitations.

To determine the ICPA's statute of limitations, the Court must assume the perspective of the Illinois Supreme Court and "attempt to ascertain the governing substantive law." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). Here, the Court could not locate any Illinois' decisions analyzing the ICPA.

---

[4] The Ninth Circuit was presented with a similar problem in *DirecTV*, when it borrowed the limitations period from the California Piracy Act. There, the California Piracy Act did not have a statute of limitations of its own. *See* 545 F.3d at 849. The court concluded that it was "irrelevant" that the California Piracy Act derived its statute of limitations from California's catch-all provision. *Id.*

14

However, the text of Illinois' various catch-all statutes of limitations makes the determination relatively straightforward.

There are three potential statutes of limitations that could apply to the ICPA. The first provides a five-year limitation for, among others, "all civil actions not otherwise provided for." 735 Ill. Comp. Stat. 5/13-205. The second provides a two year limitation for, among others, "a statutory penalty." 735 Ill. Comp. Stat. 5/13-202. And the third provides for a shorter statute of limitations for criminal penalties. 720 Ill. Comp. Stat. 5/3-5.

Here, where the ICPA expressly provides for a cause of action in civil court that is separate and distinct from its provision establishing criminal penalties, it would be baffling to apply a statute of limitations for criminal prosecutions. *See* 720 Ill. Comp. Stat. 5/16-18(c), (h); *see also Russian Media Group, LLC v. Cable America, Inc.*, No. 06 C 3578, 2008 WL 360692, at *2 (N.D. Ill. Feb. 7, 2008). Therefore the Court declines to apply the shorter statute of limitations in 720 Ill. Comp. Stat. 5/3-5.

Similarly, the Court declines to apply the two year limitation for a "statutory penalty." The Illinois Supreme Court has defined a statutory penalty as "(1) impos[ing] automatic liability for a violation of its terms; (2) se[ting] forth a predetermined amount of damages; and (3) impos[ing] damages without regard to the actual damages suffered by the plaintiff." *Landis v. Marc Realty, LLC*, 919 N.E.2d 300, 307 (Ill. 2009)(internal citations omitted).

In this case, the structure of the ICPA counsels against characterizing statutory damages as statutory penalties. Although statutory damages

15

contemplated by the ICPA do share some characteristics in common with statutory penalties, the fact that the statute grants the judge discretion in awarding them and the fact that they exist as an alternative to actual damages convinces the Court that they are not statutory penalties.

Statutory damages are similar to statutory penalties in two ways. First, statutory damages are automatic. *See Landis*, 919 N.E.2d at 307. The statute instructs that a party "may recover . . . an award of statutory damages of not less than $250." 720 Ill. Comp. Stat. 5/16-18(h)(3)(B). Second, by the statute's terms, statutory damages may be imposed without regard to actual damages because they are an alternative to actual damages. *See Landis*, 919 N.E. 2d at 307, 720 Ill. Comp. Stat. 5/16-18(h)(3)(A), (B).

However, in spite of the fact that the statute sets a range of available statutory damages, the Court does not find that it sets forth "a predetermined amount of damages." *See Landis*, 919 N.E.2d at 307. The statute allows the court to determine statutory damages as it considers just. 720 Ill. Comp. Stat. 5/16-18(h)(3)(B). Therefore the amount of statutory damages is hardly predetermined or based on a formula. Rather, it is dependent on the facts and equities of a case as determined by a judge. *See id.*

Both as part of the statute's structure and in practical application, statutory damages are meant to stand in for remedial actual damages. Plaintiffs may elect to pursue statutory damages rather than actual damages when it is difficult to prove or quantify actual damages, but the statute gives the judge the power to approximate what they may be. *See id. See also Boom Town Saloon, Inc.*, 98 F.

16

Supp. 2d 958 at 967 (observing that courts "routinely attempt to tailor [statutory damages] to provide some rough approximation of the plaintiff's actual or threatened losses."). In fact, the First Circuit – the only appellate court to evaluate the Cable Act's statutory damages provision – held that statutory damages are "merely an alternative to actual damages" and should be "based solely on the estimated value of the services stolen, without consideration of other harms . . . or of other policies favoring deterrence." *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 181 (1st Cir. 2006). Because the ICPA is so similar to the Cable Act in both coverage and remedial structure, the Court can comfortably analogize the First Circuit's holding to the ICPA and conclude that statutory damages are not statutory penalties. *See id.*

This leaves the Court with the five year statute of limitations for "all civil actions not otherwise provided for." 735 Ill. Comp. Stat. 5/13-205. The ICPA provides a civil cause of action, and it does not provide for damages. *See* 720 Ill. Comp. Stat. 5/16-18(h)(3). Therefore, the Court holds that ICPA's statute of limitations is five years.

Because Plaintiff's Complaint was filed well within a five-year window of April 21, 2012, it is timely, and Defendants' motion to dismiss on the basis of its statute of limitations affirmative defense is denied.

## Conclusion

For the forgoing reasons, Defendants Mooney's Pub Inc. and Michelle Bruce's Motion to Dismiss (Doc. 4) is DENIED**.** This case is REFERRED to Magistrate Judge Hawley for further pretrial proceedings. IT IS SO ORDERED.

Entered this 24th day of September, 2014.

s/Joe B. McDade  
JOE BILLY McDADE  
United States Senior District Judge